UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ONA MARIE TACKER,

        Plaintiff,

    v.                           Case No:  3:16-cv-1546-J-DNF

NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff, Ona Marie Tacker, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A.  Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

On April 4, 2013, Plaintiff protectively filed an application for a period of disability and DIB alleging a disability onset date of February 28, 2013. (Tr. 165-69). Plaintiff's application was denied initially on June 6, 2013, and upon reconsideration on August 8, 2013. (Tr. 103-07, 110-14). Plaintiff requested an administrative hearing and, on May 19, 2015, a hearing was held before Administrative Law Judge ("ALJ") Stephen C. Calvarese. (Tr. 39-69). On June 18, 2015, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 16-38). Plaintiff requested review of the ALJ's decision and, on October 21, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff commenced the instant action by Complaint (Doc. 1) on December 16, 2016.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2013, the alleged onset date. (Tr. 21). At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis, lupus, diabetes, disorders of the thyroid and essential hypertension. (Tr. 21). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals

the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

Before proceeding to step four, the ALJ found that Plaintiff's had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b). She can occasionally lift and carry 20 pounds, and she can frequently lift and carry 10 pounds. She can stand and or walk for six hours each out of an eight-hour workday, with normal breaks. She can sit for six hours out of an eight-hour workday, with normal breaks. She can push and pull within her exertional limitations. She can frequently climb ramps and stairs. She can occasionally climb ladders, ropes and scaffolds. She can occasionally kneel and crawl. She has no restrictions in balancing, stooping and crouching.

(Tr. 23).  At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a "general clerk" and "cashier, checker" as these jobs do not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 30-31).  The ALJ concluded that Plaintiff was not under a disability from February 28, 2013, the alleged onset date, through June 18, 2015, the date of the ALJ's decision. (Tr. 31).

## II.     Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by finding Plaintiff's mental impairments are not severe; (2) whether the ALJ erred by finding that Plaintiff's combination of impairments do not meet or medically equal a Listing; and (3) whether the ALJ erred by failing to follow the treating physician rule. (Doc. 19 p. 1).  The Court will address each issue in turn.

### A.  Whether the ALJ erred by finding Plaintiff's mental impairments are not severe.

Plaintiff argues that the ALJ erred at step two by failing to find that Plaintiff's mental impairments were severe. (Doc. 19 p. 16-18).   Specifically, Plaintiff argues that the ALJ

improperly rejected the opinion of treating psychologist Michelle Volland, Psy.D. which indicated severe mental impairments contrary to the ALJ's finding. (Doc. 19 p. 18).

Defendant argues that the ALJ properly found that Plaintiff had no severe mental impairments and that the ALJ met the threshold requirement of step two by finding that Plaintiff had physical impairments. (Doc. 23 p. 5).  In addition, Defendant contends that the ALJ properly weighed the medical opinion evidence and gave greater weight to the opinions of the reviewing psychologist than to the opinions of Dr. Volland. (Doc. 23 p. 5).

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 825 (11th Cir. 2010).  If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r*

*of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Here, the ALJ satisfied the requirements of step two by finding that Plaintiff had the severe impairments of osteoarthritis, lupus, diabetes, disorders of the thyroid and essential hypertension. Nonetheless, the Court must consider whether the ALJ committed reversible error in his treatment of Dr. Volland's opinion.

In his decision, the ALJ addressed Dr. Volland's opinions as follows:

> On March 27, 2014, the claimant participated in a psychological evaluation with Michelle Volland, Psy.D. who supervises Ms. Sievers. Dr. Volland said the claimant's mood was labile, angry, and depressed. She said the claimant's symptoms include impaired concentration, psychomotor retardation, poor impulse control, distractibility, decreased attention span, and disorganized, bizarre thoughts. Dr. Volland opined that the claimant could not work because of physical problems. Dr. Volland assigned a GAF score of 40. (Ex. 29F/61) Little weight is accorded this opinion because the alleged symptoms of poor impulse control and bizarre disorganized thoughts are not documented in Ms. Siever's treatment records. The GAF score of 40, which indicates some impairment in reality testing or a major impairment in several areas is inconsistent with the treatment records, in which Ms. Sievers consistently assigned GAF scores in the mid to high 50's, which indicates moderate symptoms. Some of the signs and symptoms that Dr. Volland reported including poor impulse control, psychomotor retardation, and disorganized bizarre thoughts, are not documented in any of the medical evidence of record.
>
> On May 5, 2014, the claimant participated in a psychological evaluation with Dr. Volland. Dr. Volland said that according to the Beck Depression Inventory II, the claimant had mild symptoms of depression. Dr. Volland diagnosed the claimant with PTSD, panic disorder, and generalized anxiety disorder. She assigned a GAF score of 55. Dr. Volland wrote that some testing descriptions came from Wikipedia (Ex. 29F/42) Some weight is accorded to this assessment. The finding of mild depression is accorded great weight because it is consistent with the conservative course of treatment. There is little evidence in the record to support a finding that the claimant has a severe anxiety related disorder. The claimant had no difficulty interacting with medical personnel, and she was able to shop in stores.

(Tr. 27-28).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).  The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004).  The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Here, the Court finds that the ALJ committed no errors in his evaluation of Dr. Volland's opinions.  The ALJ gave little weight to Dr. Volland's March 27, 2014 psychological evaluation because it documented numerous signs and symptoms that lacked support in the record such as poor impulse control, psychomotor retardation, and disorganized bizarre thoughts. (Tr. 27, 1053).  Separately, the ALJ gave great weight to Dr. Volland's May 5, 2015 psychological evaluation showing "mild" depression, but explained there was little evidence to support her finding that Plaintiff had severe anxiety-related disorders given Plaintiff's conservative course of treatment,

ability to interact with medical personnel, and her ability to shop in stores .(Tr. 28, 50, 1038, 1045). Substantial evidence supports these findings.

In his decision, the ALJ explained that at most routine medical appointments, Plaintiff presented with a normal mood and affect, despite ongoing allegations of depression and anxiety. (Tr. 30, 423, 463, 594, 854, 936, 944, 958, 969, 975, 981, 1081). Further, despite Plaintiff's claims that Dr. Volland opined concentration limitations, the ALJ noted that no concentration deficits were evident at routine medical appointments. (Tr. 22, 423, 463, 593, 841, 843, 845, 847, 854, 936, 944, 958, 970, 975, 981, 994, 998, 1000, 1002, 1004, 1008, 1010, 1012, 1014, 1018, 1020, 1022, 1024, 1050, 1055, 1057, 1059, 1061, 1063, 1065, 1069, 1071, 1073, 1081). The ALJ also noted that Plaintiff drove, read, and quilted (Tr. 24, 30, 50-51, 206-07), which activities reasonably supported minimal limitation in concentration and attention. Plaintiff reported she had no problems driving and typically quilted for one or two hours, read for one or two hours, and watched television for four or five hours per day. (Tr. 50-51).

In her brief, Plaintiff notes that her performance on the Conner's Continuous Performance test (CPT) on October 18, 2012 (Tr. 396) and May 5, 2014 (Tr. 1041) support a finding of poor attention capacity. (Doc. 18 p. 18). The CPT, which assists in the diagnosis of attention deficit hyperactivity disorder (ADHD), was just one in a battery of standard tests that Dr. Volland administered. (Tr. 296-313, 389-403, 1033-47). Plaintiff performed average or above average on other tests such as the ADHD RS-IV, Color Trail Test (CTT), digit span testing, letter/number sequencing, and digit symbol coding tests that also measured attention, processing speed, concentration, and other symptoms associated with ADHD. (Tr. 396, 399-400, 1034, 1044).

Plaintiff has failed to demonstrate that the ALJ erred at step two by failing to include severe mental impairments or in his consideration of Dr. Volland's opinions. Accordingly, the Court will not disturb the ALJ's opinion on these grounds.

**B. Whether the ALJ erred by finding that Plaintiff's combination of impairments do not meet or medically equal a Listing.**

To meet Listing 14.02 entitled "systemic lupus erythematosus" ("SLE"), a claimant must show a diagnosis of SLE with:

> A. Involvement of two or more organs/body systems with:
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss);
> or
>
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living;
> 2. Limitation in maintaining social functioning;
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 14.02, 14.10.

Plaintiff argues that her combination of impairments meets Listing 14.02A and 14.02B. (Doc. 19 p. 19-20). Plaintiff contends that she satisfies the requirements of Listing 14.02A1 because her SLE affects her joints and skin. Plaintiff contends she satisfies the requirements of Listing 14.02A2 because she the medical record indicates complaints of fatigue and malaise. Plaintiff contends that she meets Listing 14.02B because she has fatigue and malaise and marked limitations in the ability to maintain attention and concentration and perform at a consistent pace. (Doc. 19 p. 20). In response, Defendant argues that Plaintiff failed to meet her burden of establishing that she met Listing 14.02.

Here, the Court finds that the ALJ did not err by failing to find that Plaintiff met Listing 14.02. As Defendant notes, no doctor opined that Plaintiff's SLE affected more than one bodily system at a moderate level of severity. In his decision, the ALJ noted that Dr. Cecilia Olazar stated that Plaintiff was doing well and that her lupus symptoms and associated flares were controlled on her regimen of Plaquenil, CellCept, and Benlysta infusions. (Tr. 24, 696, 854, 857, 885, 935-36, 957-58, 974, 980, 969). Dr. Thomas Gaddis, who primarily treated Plaintiff's lupus, also repeatedly noted that there was a "dramatic" improvement in Plaintiff's lupus symptoms while being treated with regular Benlysta infusions. (Tr. 25-26, 786, 941, 944, 1080). While the record shows that Plaintiff's lupus caused skin rashes and joint pain, Plaintiff's skin rashes generally resolved after the alleged onset of her disability with topical medications. (Tr. 423, 463, 594, 854, 935, 942, 958, 969, 974-75, 980-81, 1081, 1214). Further, no doctor opined that Plaintiff's lupus caused or affected Plaintiff's degenerative joint disease. (Tr. 20).

Further, although Plaintiff reported experiencing fatigue or malaise on occasion, she also denied experiencing fatigue or malaise on other occasions. (Tr. 854, 953, 969, 974, 980, 1197). The terms "severe fatigue" and "malaise" have a specific meaning under the listings. Severe fatigue "means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." *Id.* at § 14.00(C)(2). The term malaise means "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." *Id.* Plaintiff has made no showing that her doctors diagnosed her with either fatigue or malaise.

### C. Whether the ALJ erred by failing to follow the treating physician rule.

Plaintiff argues that the ALJ erred by failing to give controlling or substantial weight to the opinion of treating rheumatologist Cecilia C. Olazar, M.D. (Doc. 19 p. 23). Plaintiff contends that

the ALJ failed to provide good cause for rejecting Dr. Olazar's opinion and improperly gave significant weight to the opinion of state agency medical consultant Violet Stone, M.D. (Doc. 19 p. 24).

Defendant argues that the ALJ had good cause for giving little weight to Dr. Olazar's opinions and that the ALJ properly accorded significant weight to Dr. Stone's opinion. (Doc. 23 p. 17-19).

The record shows that Dr. Olazar completed two medical source statements indicating various limitations primarily due to osteoarthritis. (Tr. 796-97, 938-39). In the first, dated May 31, 2013, Dr. Olazar provided that she has been treating Plaintiff since March 8, 2011 for SLE and urticaria. (Tr. 796). Plaintiff's symptoms include arthritic pain with weight bearing joint activity, which is often severe enough to interfere with attention and concentration. (Tr. 796). Her pain medications cause drowsiness. (Tr. 796). Dr. Olazar opined that Plaintiff would need to recline or lie down outside of normal breaks and would need unscheduled breaks for fifteen minutes. (Tr. 796). Plaintiff could sit for three hours and stand and walk for one hour in an eight hour day and she would need to shift positions at will. (Tr. 796). She could lift twenty pounds occasionally and ten pounds frequently, but was limited to 50% fine and gross manipulation and 40% reaching in an eight hour day. (Tr. 797). She would miss work three or four times a month. (Tr. 797). Dr. Olazar believed Plaintiff was not capable of working and eight hour day, five days a week. (Tr. 797).

Dr. Olazar completed another physical RFC form on May 27, 2014. She diagnosed Plaintiff with SLE, urticarial vasculitis, and degenerative joint disease of the knees. (Tr. 938). She opined Plaintiff's symptoms would constantly interfere with attention and concentration. (Tr. 938). She would need to recline or lie down outside of normal breaks and would require extra breaks three

times a day for fifteen minutes. (Tr. 938). Dr. Olazar opined Plaintiff could sit for two hours, stand and walk for one hour, perform fine and gross manipulations 20% of the day, and reach 10% of the day. (Tr. 938-39). She could lift twenty pounds occasionally and ten pounds frequently. (Tr. 939). She opined Plaintiff would miss work more than four days a month and was not capable of working an eight hour day, five days a week. (Tr. 939).

In his decision, after summarizing Dr. Olazar's opinion dated May 31, 2013, the ALJ explained that

> [l]ittle weight is accorded to this opinion because it is inconsistent with the objective imaging studies and the clinical exams, which show only mild to moderate signs and symptoms of osteoarthritis. Dr. Olazar's assessment that the claimant had limited use of her hands is not supported by any objective testing and is contradicted by the claimant's testimony that she enjoys quilting.

(Tr. 29). Later in the opinion, the ALJ summarized Dr. Olazar's opinion dated May 27, 2014, and explained that

> [l]ittle weight is accorded to this opinion because it is inconsistent with the objective imaging studies and the clinical exams, which show only mild to moderate signs and symptoms of osteoarthritis. Dr. Olazar's assessment that the claimant had limited use of her hands is not supported by any objective testing and is contradicted by the claimant's testimony that she enjoys quilting. In this opinion, Dr. Olazar opines that the claimant is significantly more limited than noted in the assessment prepared in May 2013, (Ex. 17F). However, Dr. Olazar's treatment records do not document the worsening of the symptoms that is implied in the assessment done in May 2014.

(Tr. 29).

As noted above, the opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary

finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In this case, the Court finds that the ALJ had good cause to accord little weight to Dr. Olazar's opinions. The ALJ explained that the opinions were inconsistent with clinical examinations, which showed only mild to moderate signs and symptoms of arthritis. (Tr. 29). *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Examinations by Plaintiff's doctors at the Naval Hospital showed that Plaintiff walked with a normal gait and stance, had normal strength, showed no lower extremity weakness, and had knee range of motion from 0 to 100 degrees. (Tr. 594, 1214). The ALJ gave substantial weight to the opinion of treating physician, Dr. Jerry Fasoldt at the Naval Hospital, who treated Plaintiff's osteoarthritis and released Plaintiff without limitations following an examination in March 2013. (Tr. 28, 595). The record shows that another treating physician, Dr. Gaddis, also separately noted Plaintiff had normal gait, normal movement of her extremities, normal balance, and no muscle atrophy. (Tr. 942, 945, 1081). Further, although Dr. Olazar noted Plaintiff was bow-legged (genu varum), had decreased but stable range of motion, and had an antalgic gait, she nevertheless noted Plaintiff's standing and walking were "stable and functional" and that Plaintiff had normal muscle strength and tone. (Tr. 463, 854, 935, 958, 969-70, 974-75).

The ALJ explained Dr. Olazar's opinions were inconsistent with the objective imaging studies. (Tr. 29). For example, x-rays performed in May 2014 showed only "moderate" bilateral degenerative changes of the knees. (Tr. 29, 551, 857). Although Plaintiff argues that her doctors considered the "possibility" of knee surgery based on the x-rays (Pl.'s Br. at 23), Plaintiff cites to her doctor's consideration of Zenkers diverticulum surgery, not knee surgery (Tr. 1172-74).

Regarding knee surgery, the record reveals that her doctors wanted to delay surgery for as long as possible (Tr. 643) and decided not to even consider surgery until after Plaintiff had lost weight. (Tr. 859). Rather than suggesting Plaintiff needed surgery for her arthritic knees, Dr. Olazar often repeated that Plaintiff was doing well overall (Tr. 423, 463, 854, 935, 957, 980) and that Plaintiff should continue with her present treatment regimen that appeared "adequate". (Tr. 854, 936, 981).

Third, the ALJ explained that Dr. Olazar's opinion regarding Plaintiff's use of her hands was inconsistent with Plaintiff's admitted activities and objective testing. (Tr. 29). *See* 20 C.F.R. § 404.1527(c)(4). For example, although Dr. Olazar opined Plaintiff had limited use of her hands, the ALJ noted that Plaintiff stated she enjoyed quilting (Tr. 29, 50), and Plaintiff testified that she spent up to 2 hours a day quilting. (Tr. 50-51).

Finally, the ALJ noted that Dr. Olazar failed to explain the inconsistency between her two opinions. (Tr. 29). In May 2013, Dr. Olazar opined Plaintiff could lift 10 pounds frequently, sit for 3 hours, and use her hands for 50 percent of the time (Tr. 796-97) whereas the following year, she opined Plaintiff could not lift 10 pounds frequently, could sit for only 2 hours, and could use her hands for only 20 percent of the time. (Tr. 938-39). The ALJ correctly noted that treatment records failed to document worsening of Plaintiff's symptoms between the May 31, 2013 opinion and the May 27, 2014 opinion. (Tr. 29, 463, 854, 935, 969, 980-81, 974).

The ALJ did not commit reversible error in his treatment of Dr. Olazar's opinion. Accordingly, the Court will not disturb the ALJ's findings on review.

### III.    Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 9, 2018.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties